# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 07-2481

PAMELA J. SHARP, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued July 23, 2009                                    Decided October 15, 2009 )

*Sandra E. Booth*, of Columbus, Ohio, for the appellant.

*Tracy K. Alsup,* with whom *Paul J. Hutter,* General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *David L. Quinn*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before MOORMAN, LANCE, and DAVIS, *Judges*.

DAVIS, *Judge*: Pamela J. Sharp, surviving spouse of veteran James O. Sharp, appeals from an April 26, 2007, Board of Veterans' Appeals (Board) decision that denied her entitlement to accrued benefits pursuant to 38 U.S.C. § 5121. Ms. Sharp's appeal is premised on her husband's claim for an earlier effective date for additional compensation for dependents that was pending at the time of his death.

This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a) to review the April 2007 Board decision. For the reasons below, the Court will reverse the Board's finding that no law entitled the veteran to an earlier effective date for additional compensation for dependents. The Court will set aside the April 2007 decision and remand the matter for the Board to calculate and award the appropriate accrued benefits consistent with this decision.

# I. BACKGROUND

On August 24, 1995, the Board granted Mr. Sharp's service-connection claim "for a hip disorder characterized as avascular necrosis with biltateral hip replacement." Record (R.) at 687-702. The Cleveland, Ohio, VA regional office (RO), charged with implementing the August 1995 Board decision, issued a letter on December 1, 1995, setting out Mr. Sharp's past-due benefits. The letter also informed Mr. Sharp that

> [y]ou may be entitled to additional compensation for your dependents. Before we can pay this, however, you will need to complete and return the enclosed VA Form 21-686c showing complete information concerning your present marriage and all prior marriages for you and your wife, and showing who has custody of your children. You will also need to submit your children's Social Security numbers.
>
> We currently have in your file a copy of your marriage certificate for your marriage to Pamela, and birth certificates for Catherine, Christine, and James. If you are currently married to someone other than Pamela, and/or have additional children you wish to claim as dependents, you will need to send us a copy of your marriage certificate and the birth certificates and Social Security numbers for any additional children.
>
> If Catherine and/or James were in school after their 18th birthdays, additional benefits may be payable for their schooling. If they were in school after age 18, complete and return the enclosed VA Form(s) 21-674[.]
>
> If we do not receive this within one year of the date of this letter, we will not be able to pay additional benefits for your dependents any earlier than the date we do receive it.

R. at 794-95.

VA did not receive the requested information until December 9, 1996, more than one year after the date of the letter. *See* R. at 879-89. On December 17, 1996, the RO notified Mr. Sharp of his increased benefits effective January 1, 1997–the first day of the month following submission of the evidence requested because the evidence was not received until more than one year after VA's request. *See* R. at 899. The RO also notified Mr. Sharp's attorney of the latest award and discussed the reasoning for the effective date assigned. *See* R. at 902. Mr. Sharp did not appeal that decision. *See* Appellant's Brief at 3.

2

In November 1998, the RO determined that Mr. Sharp was unemployable as a result of his service-connected disabilities and awarded him a 100% disability rating based on total disability for individual unemployability (TDIU), effective December 1, 1988. *See* R. at 1250. Shortly thereafter, Mr. Sharp submitted a Notice of Disagreement with the TDIU award because it did not include additional compensation for dependents retroactive to 1988. *See* R. at 1266-68. In a Statement of the Case (SOC), the RO determined that additional compensation for dependents was previously established and that the later grant of TDIU "was not a new basis to establish dependent[ status] from an earlier date." R. at 1297. Mr. Sharp sought Board review in May 1999 *(see* R. at 1299), but he died on December 18, 1999, while that appeal was still pending *(see* R. at 1304).

Ms. Sharp filed her original claim for dependency and indemnity compensation, including accrued benefits, in January 2000. *See* R. at 1311-14. The RO first denied her accrued benefits claim because it determined that accrued benefits could not be awarded beyond the two years immediately preceding death. *See* R. at 1323. The Board and this Court subsequently affirmed that decision. *See* R. at 1384-93; *Sharp v. Principi*, 17 Vet.App. 431 (2004) (accrued benefits limited to two years immediately preceding death). The U.S. Court of Appeals for the Federal Circuit (Federal Circuit), however, vacated that part of the Court's decision limiting accrued benefits payments to the two years immediately preceding death based on its opinion in *Terry v. Principi*, 367 F.3d 1291 (Fed. Cir. 2004) (accrued benefits can be awarded for any two-year period) and remanded the accrued benefits issue to this Court. *See Sharp v. Nicholson*, 403 F.3d 1324 (Fed. Cir. 2005). The Court then remanded the matter to the Board, *see Sharp v. Nicholson*, 20 Vet.App. 227 (2005) (table), which remanded the matter to the RO on August 14, 2006.

In a November 7, 2006, decision, the RO denied Ms. Sharp accrued benefits in the form of additional compensation for dependents. The RO reasoned that the initial decision dated December 17, 1996, granting additional compensation for dependents effective January 1, 1997, became final and that there is no provision in the statutes or regulations providing a second opportunity to establish entitlement and an earlier effective date. *See* R. at 1477-83. The Board agreed with the RO that "there is no provision in the law to award an earlier effective date" after entitlement to

3

additional compensation for dependents had already been established. R. at 6. This appeal ensued.[1]

## II. ARGUMENTS ON APPEAL

Ms. Sharp argues that she is entitled to accrued benefits because when her husband died, he had a pending appeal regarding additional compensation for dependents. In his pending appeal, Mr. Sharp sought an effective date of December 1, 1988, for additional compensation for dependents under 38 U.S.C. §§ 1115 (additional compensation for dependents) and 5110(f) (effective dates). In appealing the denial of accrued benefits based on her husband's claim, Ms. Sharp asserts now that VA's grant of TDIU, effective December 1, 1988, was a qualifying disability rating entitling her husband to a new consideration of additional compensation for dependents, effective December 1, 1988. She contends that 38 U.S.C. § 1115 is clear and unambiguous as it mandates that a "veteran . . . shall be entitled to additional compensation for dependents" when certain disability percentages are met. 38 U.S.C. § 1115. She further reasons that 38 U.S.C. § 5110(f) supports her argument because the statute's language does not limit the effective date to a particular rating decision, but rather applies to any rating decision meeting the percentage requirements of section 1115.

The Secretary argues that Mr. Sharp was, at the time of filing his claim, already receiving additional compensation for dependents, and that no authority supports the position that he could seek an earlier effective date for that compensation based on the TDIU award. The Secretary further contends that section 5110(f) is clear and unambiguous in its restriction of an effective date when proof of dependents is not received within one year of the Secretary's request for such information. The Secretary perceives Ms. Sharp's current argument to be a "free standing collateral attack upon the final December 1996 RO decision which is not permitted by law." Secretary's Brief at 8.

## III. ANALYSIS

The ultimate question before the Court rests on whether a proper interpretation of relevant statutory provisions, 38 U.S.C. §§ 1115, 5110(f), requires that entitlement to additional

---

[1] On appeal, Ms. Sharp acknowledges that the version of 38 U.S.C. § 5121 in effect in 1999, when the veteran died, limited the survivor's recovery to two years' worth of accrued benefits. She concedes that her accrued benefits claim is subject to this two-year limit. Appellant's Brief at 8 n.1.

4

compensation for dependents be premised on (1) *only the first* rating decision meeting statutory criteria or (2) *any* rating decision meeting the statutory criteria. The Court reviews statutory and regulatory interpretation de novo. 38 U.S.C. § 7261(a)(1); *Majeed v. Nicholson*, 19 Vet.App. 525, 531 (2006).

## A. Statutory Interpretation

"When a statute is at issue, we begin with the statutory language." *McGee v. Peake*, 511 F.3d 1352, 1356 (Fed. Cir. 2008); *see also Williams v. Taylor*, 529 U.S. 420, 431 (2000); *Myore v. Nicholson*, 489 F.3d 1207, 1211 (Fed. Cir. 2007). "The statute's plain meaning is derived from its text and its structure." *McGee*, 511 F.3d at 1356; *see Gardner v. Derwinski*, 1 Vet.App. 584, 586 (1991) ("Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute." (citing *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 403-05 (1988))), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994). If "the plain meaning of a statute is discernable, that 'plain meaning must be given effect,'" *Johnson v. Brown*, 9 Vet.App. 369, 371 (1996) (quoting *Tallman v. Brown*, 7 Vet.App. 453, 460 (1995)), unless a "'literal application of [the] statute will produce a result demonstrably at odds with the intention of its drafters,'" *Gardner*, 1 Vet.App. at 586-87 (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564 (1982)); *see also Roper v. Nicholson*, 20 Vet.App. 173, 180 (2006).

The first question in statutory interpretation is always "whether Congress has directly spoken to the precise question at issue." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* "If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction of the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.*; *see also Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 665 (2007).

### 1. 38 U.S.C. § 1115

The language of section 1115 clearly and succinctly addresses when a veteran is entitled to

additional compensation for dependents:

> Any veteran entitled to compensation at the rates provided in section 1114 of this title, and whose disability is rated not less than 30[%], shall be entitled to additional compensation for dependents . . . .

38 U.S.C. § 1115. The Court cannot envision how Congress could have created a more direct mandate. The statute unambiguously requires the veteran to establish two facts: (1) That he or she is entitled to section 1114 compensation, and (2) that his or her disability is rated not less than 30%. The statute dictates that once the veteran establishes these two facts, he or she *shall be* entitled to additional compensation for dependents. The purpose of the statute is also clear: "to defray the costs of supporting the veteran's . . . dependents" when a service-connected disability is of a certain level hindering the veteran's employment abilities. S. REP. NO. 95-1054, at 19 (1978).

The statute, however, does not define for the veteran how to acquire this additional compensation–that is, whether the "additional compensation" is a freestanding claim or part of every claim for VA compensation benefits that resulted in a rating decision that awarded or increased the veteran's disability rating above 30%. Section 1115 is also silent on the issue of how the effective date for such entitlement is determined. The statute simply states what factors must exist for a veteran to qualify for additional compensation for dependents–nothing more, nothing less.

The limited legislative history enlightens the Court as to the purpose of providing additional compensation for dependents, but such history does not assist the Court in determining whether Congress intended additional compensation for dependents under section 1115 to be on (1) *only the first* rating decision meeting statutory criteria of section 1115 or (2) *any* rating decision meeting the statutory criteria. *See Chevron, supra.*

Thus, based on the plain language of the statute, the Court is not persuaded by the Secretary's argument that section 1115 requires a freestanding claim for benefits. The Court concludes that entitlement to section 1115 compensation does not require a separate claim. The straightforward language of section 1115 merely means that the veteran has met certain requirements necessary for additional compensation. *See Rice v. Shinseki*, 22 Vet.App. 447, 452 (2009) (entitlement to TDIU "merely means that the veteran has met certain qualifications" necessary for a total rating). Entitlement to additional compensation for dependents under section 1115 is implicitly raised

whenever a veteran has a disability rating of at least 30% and submits evidence of dependents. *Cf. Comer v. Peake*, 552 F.3d 1362, 1367 (Fed. Cir. 2009). This view is supported by the plain language of section 1115: once VA determined Mr. Sharp was "entitled to compensation at the rates provided in section 1114" and had a disability rating "not less than 30[%]," VA immediately notified him that he was "entitled to additional compensation for dependents" and Mr. Sharp only needed to submit updated information about his dependents to receive it. 38 U.S.C. § 1115.

### 2. 38 U.S.C. § 5110(f)

Section 5110(f) is the "[e]ffective date of awards" statute pertaining to additional compensation for dependents and provides:

> An award of additional compensation on account of dependents based on the establishment of a disability rating in the percentage evaluation specified by law for the purpose shall be payable from the effective date of such rating; but only if proof of dependents is received within one year from the date of notification of such rating action.

38 U.S.C. § 5110(f). The statute instructs that an award of additional compensation is "based on *the establishment of a* disability rating" meeting the section 1115 requirements. *See* 38 U.S.C. § 5110(f) (emphasis added). This phrase is critical to the outcome of this case, with both parties arguing a different meaning. The Secretary posits that "the establishment of a disability rating" means only the first disability rating meeting the section 1115 requirements for additional compensation for dependents. Whereas Ms. Sharp contends that the phrase means any and all disability rating decisions that meet the statutory requirements of section 1115. The ultimate conclusion here is that the effective date statute does not answer the precise question at issue–whether entitlement to additional compensation for dependents is premised on (1) *only the first* rating decision meeting statutory criteria or (2) *any* rating decision meeting the statutory criteria.

Given the contrasting interpretations of the parties, the Court first turns to the plain meaning of the statute. The plain meaning of a term or phrase "begins with its 'ordinary, contemporary, common meaning.'" *McGee*, 511 F.3d at 1356 (quoting *Williams*, 529 U.S. at 431). As this Court recently iterated, "[i]t is commonplace to consult dictionaries to ascertain a term's ordinary meaning." *Nielson v. Shinseki*, 23 Vet.App. 56, 59 (2009); *see also United States v. Rodgers*, 466 U.S. 475, 479

7

(1984). "Disability rating" is a phrase common in veteran's parlance. In most basic terms, "disability rating" is the percentage "evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service." 38 C.F.R. § 4.1 (2009). The indefinite article "a," is "[u]sed before nouns and noun phrases that denote a single, *but unspecified*, person or thing." WEBSTER'S II NEW COLLEGE DICTIONARY 1 (2001) [hereinafter "WEBSTER'S"] (definition 1) (emphasis added). "A" is also defined as "[a]ny." WEBSTER'S at 1 (definition 4).

Thus, the ordinary, contemporary, common meaning–or plain meaning–of "a disability rating" is any single decision rating a veteran's disability. Further interpretation is muddied, however, based on the overall statutory framework. The effective date of additional compensation for dependents is based on "*the establishment of* a disability rating." 38 U.S.C. § 5110(f). Whether a disability rating can be *established* more than once is unclear. As stated above, the Secretary believes only one rating decision, and namely the first rating decision meeting section 1115 requirements, *establishes* entitlement to additional compensation for dependents. Contrastingly, Ms. Sharp argues that all rating decisions adhering to the section 1115 elements establish entitlement to additional compensation for dependents.

The Court also looks to the overall structure of section 5110 for guidance. Generally, effective dates of compensation awards are attached to the date of receipt of the application for benefits, and no earlier. *See* 38 U.S.C. § 5110(a). In the subsections (b)(1), (b)(2), (c), and (d), effective dates can be earlier than the date of application, but only if the application is received within one year of a specified date. *See* 38 U.S.C. § 5110(b)(1) (date of discharge or release if application received within one year of that date); (b)(2) (earliest date of ascertainable increase if application received within one year of that date); (c) (date of injury or aggravation if application received within one year of that date); (d) (first day of month in which death occurred if application received within one year of that date). Significantly, each of these originating dates is a date certain: generally, there is only one discharge date; there is only one date an increase is ascertainable; there is only one date of death. Under section 5110(f), however, the effective date is based "on the establishment of a disability rating" meeting certain requirements. 38 U.S.C. § 5110(f). Because more than one disability rating can meet the specific requirements of section 5110(f), subsection f does not prescribe a date certain as the other subparts do. The Court cannot conclude from a review

8

of the statutory structure that Congress intended to restrict section 5110(f) to only one date certain, which it could have accomplished by using different language. Nothing in the legislative history supports such a limitation.

The Court therefore concludes that neither statute on its face nor legislative history provides any guidance in answering the precise question at issue. The plain language and statutory framework leaves a gap that must be filled. Whether entitlement to additional compensation for dependents is premised on (1) *only the first* rating decision meeting statutory criteria or (2) *any* rating decision meeting the statutory criteria is not answered by the statute. The Court will next address whether the Secretary has promulgated regulations that provide a reasonable interpretation of the statutes. *See Chevron*, 467 U.S. at 842-43; *see also Nat'l Ass'n of Home Builders, supra.*

B. Regulatory Language

*1. 38 C.F.R. § 3.4(b)(2)*

Section 3.4(b)(2) of title 38, Code of Federal Regulations, promulgated pursuant to 38 U.S.C. § 1115, provides:

> An additional amount of compensation may be payable for a spouse, child, and/or dependent parent where a veteran is entitled to compensation based on disability evaluated as 30[%] or more disabling.

38 C.F.R. § 3.4(b)(2) (2009). This regulation does not assist in the interpretation of section 1115 because it merely parrots the statutory language. Indeed, the regulation contains no language in addition to that already found in the statute. Having no interpretive value, the Agency's regulation does not provide a reasonable interpretation of the statute. *See Chevron* and *NLRB,* both *supra.*

*2. 38 C.F.R. § 3.401(b)*

Section 3.401(b) of title 38, Code of Federal Regulations, promulgated pursuant to 38 U.S.C. § 5110(f), provides:

> Awards of pension or compensation payable to or for a veteran will be effective as follows:
>
> . . . .
>
> (b) *Dependent, additional compensation or pension for*. Latest of the following dates:

9

. . . .

> (3) Effective date of the qualifying disability rating provided evidence of
> dependency is received within 1 year of notification of such rating action.

38 C.F.R. § 3.401(b) (2009). This regulation similarly does not aid in discerning whether the Secretary considers there to be only one qualifying rating, as opposed to every rating meeting the statutory requirements to be a qualifying rating. The Court observes that, in an effort to outline the selection criteria for an effective date for the award of additional compensation for dependents, part of the regulation states: "[e]ffective date of *the qualifying disability rating* provided evidence of dependency is received within 1 year of notification of such rating action." 38 C.F.R. § 3.401(b)(3) (emphasis added).

The Court is not persuaded by the Secretary's argument that this language supports his interpretation that only the first qualifying disability rating qualifies for additional compensation. One fair view of the matter is that this regulation narrows the statutory language by introducing the definite article "the" in its phrase "the qualifying rating decision." *See Chevron, supra.* In addition, the regulation's use of "the," rather than the statute's "a," in reference to the qualifying disability rating simply changes the article, does nothing to resolve the issue, and does not reflect a deliberate effort to interpret the statute's meaning. *See Sursely v. Peake*, 551 F.3d 1351, 1355 (Fed. Cir. 2009) (concluding that the Secretary's regulation using the word "the" rather than the statute's "a" in reference to the term "clothing allowance" did not reflect a deliberate effort to interpret the statute's meaning). We conclude that the regulation essentially mirrors the statute, section 5110(f). The regulation, including the phrase "the qualifying disability rating," does not clarify the question of whether entitlement to additional compensation for dependents is premised on (1) *only the first* rating decision meeting statutory criteria or (2) *any* rating decision meeting the statutory criteria. The question remains.

Deference to the regulation that offers no additional clarity to the interpretive issue would be inappropriate. *See Nat'l Ass'n of Home Builders, supra*. Because the regulations mirror the statutes, the question presented is one of statutory interpretation. *See Sursely*, 551 F.3d at 1355; *see also Gonzales v. Oregon*, 546 U.S. 243, 257 (2006) ("[T]he existence of a parroting regulation does not change the fact that the question here is not the meaning of the regulation but the meaning of the

10

statute."). Under such circumstances, the Secretary's interpretation of the statute is not subject to *Chevron* deference, *see Chervon, supra*, but his interpretation is entitled to respect to the extent it has the "power to persuade." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *Haas v. Shinseki*, 525 F.3d 1168, 1186 (Fed. Cir. 2008) ("[The] rule [of *Chevron* deference] does not apply if a particular regulation merely 'parrots' statutory language, because if it did, an agency could bypass meaningful rule-making procedures by simply adopting an informal 'interpretation' of regulatory language taken directly from the statute in question."). As discussed below, we do not find the Secretary's interpretation persuasive.

## C.  Interpretation of Section 5110(f)

With no guidance from the statutes or regulations, the Court considers the Secretary's interpretation of the statute. The Secretary argues that section 5110(f) limits the retroactive award for an effective date to the first rating decision that qualifies a veteran for additional dependency compensation, that is, *only the first* rating decision entitling a veteran to additional compensation for dependents. That interpretation is not entitled to deference, and the Secretary has offered no support for his interpretation.

In the face of statutory ambiguity and the lack of a persuasive interpretation of the statute from the Secretary, the Court applies the rule that "interpretative doubt is to be resolved in the veteran's favor." *Brown v. Gardner*, 513 U.S. 115, 118 (1994). It is more favorable to veterans if the effective date for additional dependency compensation is premised on *any* rating decision meeting the statutory criteria of section 1115, rather than on *only the first* rating decision meeting statutory criteria. Thus, even if the Secretary's interpretation of section 5110(f) is plausible, it would be appropriate under *Brown v. Gardner* only if the statutory language unambiguously permitted only the first or initial disability rating decision that awarded a rating above the minimum allowed for additional dependency compensation (i.e., 30%). Because section 5110(f) permits the reading whereby *any* rating decision meeting the statutory criteria of section 1115 can be the basis of an effective date for the award of additional compensation for dependents, it is ambiguous and the rule in *Brown v. Gardner* therefore requires the expansive reading of the statute. *See Sursely*, 551 F.3d at 1357.

The Court is mindful of the role of finality in decisions regarding additional compensation

for dependents. But the Court notes that the status of dependents can be ever changing. A determination of additional compensation for dependents that is well-settled for several years could require alteration in situations where a new child is born, the veteran and spouse divorce, or a dependent ages out or dies. Each of these events requires a recalculation not only of the amount of benefits being awarded, but also of the effective dates assigned. Moreover, even if the status of dependents remains unchanged, the veteran's level of disability can increase or decrease several times, also requiring a recalculation of the amount of the additional compensation awarded and the respective effective dates. *See* 38 U.S.C. § 1115(2) (requiring percentage of additional compensation to be comparable to the level of disability assigned). Section 5110(f) (effective dates) and its corresponding regulation, 38 C.F.R. § 3.401(b), appear to be unique in that they prescribe fluid effective dates based on dependents' changing circumstances and that they are ultimately linked to the underlying rating decisions meeting section 1115 requirements.[2]

In sum, the statutes are silent as to the ultimate issue, the *Brown v. Gardner* rule is applicable, and the interpretation provided by the appellant is consistent with the statute's plain language. *See also Nat'l Ass'n of Home Builders*, 551 U.S. at 665. Thus, consistent with the plain language of section 1115 statute and regulations, the Court holds that entitlement to additional compensation for dependents is premised on any rating decision establishing compensation under section 1114 and rating the disability not less than 30%. Interpreting section 5110(f), the Court holds that the effective date for additional compensation for dependents shall be the same as the date of the rating decision giving rise to such entitlement, irrespective of any previous grant of section 1115 benefits, if proof of dependents is submitted within one year of notice of the rating action. We hold that there can be multiple rating decisions that establish entitlement to additional dependency compensation. This conclusion construes the statutes in the light most favorable to the veteran. *See Brown v. Gardner* and *Sursely*, both *supra*. This holding applies to the specific facts and circumstance of the case before us. Because section 5110(f) did not answer the question whether

---

[2] The Court notes that, under the Secretary's proposed interpretation, the order in which a veteran's claims are adjudicated by the RO may control the effective date for dependents benefits in instances in which a veteran files multiple claims near in time. For instance, a more complicated claim may take longer to adjudicate—particularly if it is appealed—but yield a substantially earlier effective date than another less complicated claim filed at or near the same time. If we were to adopt the Secretary's position, thereby tying dependents benefits to the first qualifying rating granted, then veterans could be arbitrarily disadvantaged based purely on delays in adjudication that are beyond their control.

additional dependents compensation is premised on *only* the *first* rating decision meeting the statutory criteria of section 1115, the Court notes that had the Secretary, rather than parrot the statute, chosen to fill in the gaps of section 5110(f) in his regulation, the Secretary's interpretation of the statute would have been eligible for *Chevron* deference. *See Chevron*, 467 U.S. at 844-45. If the Secretary believes that this matter warrants an interpretation of the statute that is different from the reading given by the Court today, which is based on a reading that resolves interpretative doubt in the veteran's favor, the appropriate procedure would be for the Secretary to exercise his authority and promulgate a regulation to that effect. *See* 38 U.S.C. § 501.

Here, the November 1998 rating decision awarding TDIU, effective December 1, 1988, was a rating decision that established additional compensation, and VA received the requisite information regarding dependents within one year of the 1998 decision. Ms. Sharp is therefore entitled to dependents compensation at the TDIU rate from the effective date of her husband's TDIU rating: December 1, 1988. As discussed above, however, her accrued benefits claim is limited to two-years before the veteran's death, based on the version of 38 U.S.C. § 5121 in effect in 1999, when the veteran died.

## III. CONCLUSION

Upon consideration of the forgoing, the Court REVERSES the Board's April 26, 2007, findings that no provision in the law entitles the veteran to an earlier effective date for additional compensation for dependents, and that Ms. Sharp is not entitled to accrued benefits. The Court SETS ASIDE the Board's April 26, 2007, decision and REMANDS the matter for implementation of this opinion.

13